UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

Chery Brown,                                                    Case No. 20-23632 LMI

                    Debtor.                                     Chapter 7

_____/

## UNITED STATES TRUSTEE'S MOTION FOR EXAMINATION OF FEES OF HAIDAN HUANG AND THE SEMRAD LAW FIRM A/K/A DEBSTOPPERS UNDER 11 U.S.C. SECTION 329(b); FEDERAL RULES OF BANKRUPTCY PROCEDURE RULE 2016 AND 2017; AND FOR AN INJUNCTION AGAINST PROHIBITED CONDUCT

COMES NOW the United States Trustee for Region 21, Nancy J. Gargula (the "United States Trustee"), by and through the undersigned attorney, and moves this Court for an examination of fee collected by Haidan Huang and The Semrad Law Firm a/k/a Debtstoppers ("Semrad and Huang") and for an injunction against future instances of prohibited conduct.  In support, the United States Trustee states as follows:

### SUMMARY OF ARGUMENT

This motion concerns the Chapter 7 consumer business practices of Semrad and Huang and what has come to be known as $0 Down bankruptcy and the bifurcation of attorney fees in consumer chapter 7 cases. In an apparent attempt to increase his client base and collect attorney fees for bankruptcy services through post-petition payments, the attorney has implemented business practices which include the following features: (1) the marketing of "$0 Up-Front Bankruptcy" or little money down Chapter 7 bankruptcy cases; (2) the bifurcation of bankruptcy services into pre-petition and post-petition components; (3) the performance of "limited" prepetition services for, purportedly, little or no charge; (4) the post-petition collection of fees for purported post-petition services in amounts disproportionate to the services provided and (5) loaning money to the Debtor to pay the filing fee.

1

The debtor in this case did not pay the entire fee of her bankruptcy attorney pre-petition. In fact, the Debtor paid $0 pre-petition.  Instead, her attorney split the attorney fee into a pre-petition amount, and a post-petition amount, which was to be paid in post-petition installments, a practice commonly known as the bifurcation of fees and "$0 Up-Front Bankruptcy".  Although the United States Trustee does not at this time take a position on the practice of bifurcation of fees and no Court in this District has directly addressed the issue in a published opinion,[1] the Court in Walton v. Clark & Washington, P.C., ("Clark & Washington"), 469 B.R. 383 (Bankr. M.D. Fla. 2012) found this to be an acceptable arrangement under enumerated circumstances. However, the circumstances in this case, are clearly not in conformance  with the holding in Clark & Washington, and these $0 down bankruptcy filings are simply used to circumvent the Local Rules and the Federal Rules of Bankruptcy Procedure.

The United States Trustee argues that Semrad and Huang's fees are not compensable under 11 U.S.C. § 329(b).[2]  First and foremost, the "bifurcation" of fees is nothing more than a veiled attempt to satisfy Local Rule 2090-1 (E) which provides as follows:

---

[1] The United States Trustee is aware of an unpublished opinion in the case of In re Effenson, where Judge Mora addressed the issue of post-petition payment of fees for prepetition work. Judge Mora succinctly stated that "Pursuant to Local Rule 2090-1(E), an attorney who files a petition on behalf of a chapter 7 debtor must advise the debtor of, and assist the debtor in complying with, all duties of a chapter 7 debtor under §521. Therefore, as of the petition date, counsel was imposed with the responsibility to assist the debtor in completing his Chapter 7 petition and related pleadings, appearing at the §341 meeting of creditors and providing legal advice related to the Chapter 7 case. Such obligation cannot be broken into separate pre-petition and post-petition obligations to be paid all on a post-petition basis". In re Effenson, Case No. 20-10713-MAM (ECF #28). Judge Kimball addressed a similar issue in In re Walls, Case No. 20-10431-EPK (ECF #25).

[2] Unless otherwise indicated, all statutory references pertain to title 11 of the United States Code (the "Bankruptcy Code").

(E)     **Duties of Debtor's Counsel.** Unless the attorney has withdrawn as attorney for the debtor pursuant to Local Rule 2091-1, an attorney who files a petition on behalf of a debtor must advise the debtor of, and assist the debtor in complying with, all duties of a debtor under 11 U.S.C. §521.

Second, the fees charged post-petition are disproportionate and not commensurate with the services provided. Third, even if the Court were to allow a bifurcated fee practice, the fees are not compensable due to counsel's failure to comply with the conditions identified by Judge Williamson in Clark & Washington. Fourth, the fees are not compensable as Semrad failed to comply with the filing and disclosure requirements set forth in Federal Rule of Bankruptcy Procedure 2016 ("FRCP 2016") and Fifth, Semrad and Huang are loaning money to debtors in contemplation of filing for the payment of the filing fee. Semrad and Huang may argue that the "loan" technically does not occur until after the filing because the electronic payment is not processed by the Clerk of the Court until night of filing, but this is just another attempt to circumvent the rules and, is also a violation of the Rules Regulating The Florida Bar ("Florida Bar Rules").

The fees paid, to be paid and the agreements are subject to examination pursuant to Federal Rule of Bankruptcy Procedure 2017(a) and (b) ("FRCP 2017").  Disgorgement is appropriate because Semrad did not timely or adequately disclose the receipt of fees, pursuant to FRCP 2016 throughout this case. Finally, the Court should issue an injunction against further violations because this conduct is likely to be recurring.

## BACKGROUND

1.      On December 15, 2020 (the "Petition Date"), Chery Brown (the "Debtor") filed a voluntary petition (ECF #1) for relief under chapter 7 of the Bankruptcy Code.

2.      Scott Brown is the duly appointed chapter 7 trustee.

3.      The Debtor's Schedules and Statement of Financial Affairs (SOFA),  (ECF #1)

were filed together with the voluntary petition on December 15, 2020 (ECF #1)[3].

4.      The section 341(a) meeting of creditors (the "Meeting of Creditors") for this case commenced January 20, 2021 and concluded on February 10, 2021.

5.      The Debtor has not yet obtained her discharge.

**Disclosure of Compensation**

6.      On the Petition Date, Semrad filed the Bankruptcy Form 2030, Disclosure of Compensation of Attorney for Debtor (the "Fee Disclosure") (ECF #4).   Semrad and Huang disclosed that he had agreed to accept $1,362 for his legal services and that the Debtor had made a payment $0 prior to the Petition Date, leaving a "balance due" in the full amount of $1,362.

7.      The Fee Disclosure further states that the Debtor is the source of the $1,362 in compensation to be paid.

8.      In response to line 5 of the Fee Disclosure, Semrad and Huang stated that the legal fee consisted of the following:

> In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
>
> b. Preparation and filing of any petition, schedules, statements of affairs and plan which may be required;
>
> c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

9.      In response to question No. 16 of  SOFA, the Debtor disclosed that she had made a

---

[3] At the time of filing, the Debtor had gross monthly income of $3,517.87 and net income of $3,284.82 after payroll deductions according to Schedule I (ECF #1) and $3,280.00 in expenses on Schedule J, leaving net (disposable) income of $4.82. At the continued Meeting of Creditors, the Debtor testified that she is no longer employed. The non-filing spouse is not employed. The expenses on Schedule J do not include monthly attorney fees for post-petition services.

payment to Semrad and Huang in the amount of $0.

**Retention Agreements**

10.    The United States Trustee has obtained copies of both the pre-petition and post-

petition retention agreements for legal services executed by the Debtor and Semrad and Huang in

this case.  The agreements appear to be standard in all chapter 7 cases filed by Semrad and Huang[4].

---

[4] Semrad has engaged in the bifurcation of fees in this case and other chapter 7 cases in this
District.  By way of example (not an exhaustive list), the following pending cases involve either
$0 or minimal money down and the bifurcation of fees:

   i)     <u>In re T…</u>, Case No. 20-19986 AJC; $0 down, $1,165 post-petition, minimal post-
petition services, negative $115 disposable income on Schedule J, no post-petition
attorney expense listed on Schedule J, discharge entered, case closed.

   ii)    <u>In re P…</u>, Case No. 20-18634 EPK; $0 down, $1,265 post-petition, minimal post-
petition services, $7 disposable income on Schedule J, no post-petition attorney
expense on Schedule J, discharge entered, case closed.

   iii)   iii) <u>In re E…</u>, Case No. 20-18514 LMI; $300 pre-petition; $965 post-petition,
minimal post-petition services, $2 disposable income on Schedule J, no post-petition
attorney expense on Schedule J discharge entered, case closed

   iv)   iv) <u>In re C…</u>, Case No. 20-18927 LMI; $350 pre-petition; $1,165 post-petition,
minimal post-petition services, negative $43.57 disposable income on Schedule J, no
post-petition attorney expense on Schedule J, discharge entered, case closed

   v)    v) <u>In re S...</u>, Case No. 20-18773 AJC: $0 down, $1,265 post-petition, minimal post-
petition services, negative $26 disposable income on Schedule J, no post-petition
attorney expense on Schedule J, discharge entered.

   vi)   vi) <u>In re G…</u>, Case No. 20-23563 RAM; $0 down, $1,032 post-petition, minimal
post-petition services, negative $90.49 disposable income, no post-petition attorney
expense on Schedule J.

   vii)   vii) <u>In re V…</u>, Case No. 20-23549 RAM; $0 down, $1,262 post-petition, minimal
post-petition services, negative $150.43 disposable income on Schedule J, no post-
petition attorney expense on Schedule J.

   viii)   viii)  <u>In re G…</u>, Case. 20-23568 MAM; $0 down, $1,262 post-petition, minimal post-
petition services, $30.45 disposable income on Schedule J, no post-petition attorney
expense on Schedule J.

   ix)   ix) <u>In re D…</u>, Case No. 20-23675 PDR; $0 down, $762 post-petition, negative
$200.84 in disposable income on Schedule j, no post-petition attorney expense on
Schedule J.

   x)    x) <u>In re S…</u>, Case No. 20-23809 PDR. $0 down, $1,262 post-petition, $6.80 in
disposable income, no post-petition attorney expense on Schedule J.

    In several of these cases, the debtors have received their discharge with minimal or no
substantive work performed post filing. As of the date of this motion, the United
States Trustee has not requested the retention agreement(s) executed by the debtors in

11.    On December 14, 2020, a day prior to filing the voluntary petition, the Debtor purportedly executed an engagement agreement ("Engagement Letter"), a copy of which is attached as Exhibit A. The Electronic signature page appears to be dated after the filing on December 15, 2020 at 3:31. The case was filed at 2:40 pm on December 15, 2020.

12.    The Engagement Letter provides that Semrad and Huang will represent the Debtor "in all aspects of your bankruptcy case…". The very next paragraph provides for "conditional representation" on the condition that the debtor will enter and sign an agreement after the filing of your bankruptcy case to pay the firm for services rendered after the filing of the case.  If the Debtor refuses to enter into and sign the agreement within (10) days after the filing of the case, the firm will file a motion to withdraw from representing the Debtor.

13.    The Engagement Letter identifies the services provided in exchange for the Pre-petition fees in paragraph 3 of the agreement as follows:

Prepetition Fees.
   a. **Before** the case is filed, the Firm agrees to:
      i. Personally counsel you regarding the advisability of filing either a Chapter13 or a Chapter 7 case, discuss both procedures as well as nonbankruptcy options, and answer your questions;
      ii. Personally explain to you that the Firm is being engaged to represent you on all matters arising in the case, as required by Local Bankruptcy Rule, and explain how and when the attorney's fees are determined and paid;
      iii. Personally review with you and sign the completed petition, statements, and schedules;
      iv. Timely prepare and file your petition, statements, and schedules,
      v. Advise you on which creditors you will need to continue to pay, such as housing or vehicle payments that you intend to retain.
   b. The fee for services provide before the case is filed is $0
   c. The Firm may also incur costs for such items as credit reports and tax transcripts for which it will not seek reimbursement.

---

these cases.

14.    The Engagement Letter identifies the services provided in exchange for the Post-

Petition fees in paragraph four of the agreement as follows:

Post-Petition Fees.

a. After the case is filed, the Firm agrees to:
    i Advise you of the requirement to attend the meeting of creditors and notify you of the date, time, and place of the meeting;
    ii. Advise you of the requirement to attend a debtor education course and provide a certificate of completion to the Firm;
    iii. Send notice of your case filing to creditors;
    iv. Correspond with creditors regarding any matters necessary for the administration of your case, including to cease payroll garnishments, unfreeze bank accounts, or recover property that was improperly seized by a creditor;
    v. Timely submit to the Chapter 7 trustee properly documented proof of income, tax records as well as any other necessary documentation;
    vi. Provide you with knowledgeable legal representation at the meeting of creditors as well as any continued or rescheduled meetings in time for check-in and examination;
    vii. Timely prepare and file the notice of completion of the debtor education course;
    viii. If the Firm will be employing another attorney to attend the meeting of creditors, personally explain to you, in advance, the role and identity of the other attorneys and provide that attorney with your file in sufficient time to review it and properly represent you at the meeting;
    ix. Timely negotiate with the Trustee regarding any property or actions that the Trustee may pursue that could be adverse to your interests;
    x. Timely prepare, file, and serve any necessary statements, amended statements, amended schedules and any change of address, in accordance with information provided by you;
    xi. Monitor all incoming case information, including but not limited to, Reaffirmation agreements, notice of audits by the US Trustee, correspondence from you or any interested parties;
    xii. Review and negotiate, if necessary, any reaffirmation agreements and personally explain the terms of said agreements to you;
    xiii. Be available to respond to your questions throughout the term of the case;
    xiv. Review and timely respond, if necessary, to Trustee motions to dismiss the case;
    xv. Review and timely respond, if necessary, to motions for relief from stay;
    xvi. Prepare, file, and serve all appropriate motions to avoid liens;
    xvii. Prepare, file, and serve all appropriate motion to redeem;
    xviii. Send *In Re Mendiola* letters to previously undisclosed creditors; and
    xix. Provide any other legal services necessary for the administration of the case.

b. The fee for services provide after the case is filed is $1,362

c. The firm will have no right to payment of the fee listed in section 4(b) unless you sign an agreement after the filing of your bankruptcy case to pay the Firm for services rendered after the filing of your case.

d. After the case is filed, the Bankruptcy Court will require payment of filing fees in the amount of $335.00. In order to pay this, you have two (2) options (please circle one):

    i. Pay the costs directly to the bankruptcy court either all at once, or apply to pay these costs in installments; or

    ii. Request that the Firm pay the costs on your behalf for which it will seek reimbursement from you;

15.  The Debtor never "circled" her selection as directed in the Engagement Letter for payment of the filing fee in subparagraph d of the Engagement Letter but did testify at the continued Meeting of Creditors that the decision to borrow funds from the firm was made prior the filing and it was always included in the fee arrangement.

16.    On December 15, 2020, the Debtor purportedly executed a second agreement for the post-petition services (Post Petition Agreement"). A copy of the Post -Petition Agreement is attached as Exhibit B. The type written date on the document signed by the Debtor is December 15, 2020, but the Electronic signature page is dated, December 17, 2020 at 1:34.

17.  The amount charged and a list of services to be provided in the Post-Petition Agreement include the nineteen (19) services previously listed in paragraph 4 of the Engagement Letter and adds the following:

    xx. Provide post discharge services such as a review of Client(s)' credit report and advising Client(s) regarding possible discharge violations that may have occurred.

    b. The fee for services provide after the case is filed is $1,700

18.  Although not disclosed, the post-petition fee apparently now includes the $338 filing fee, which is why the amount of the fee is now $1,700, instead of $1,362.  The Debtor testified at the continued meeting of creditors on February 10, 2021, that the decision to borrow the money

from Semrad was made pre-petition and was always contemplated to be included in the fee.

19.    It is the United States Trustee's understanding that the balance of the fees purportedly owed post-petition under the bifurcation of fee arrangement are paid in monthly installments over an eight (8) month period. The installment payments are recurring with automatic ACH debit card transactions.

20.    Semrad and Huang provided the attached Credit/Debit Card Authorization Form ("Debit Card Authorization Form"), attached as Exhibit C, dated and signed December 15, 2020, but apparently not electronically signed by the Debtor until February 10, 2021, the date of the continued Meeting of Creditors in this case.

21.    The Debit Card Authorization Form provides for monthly payments of $212.50 commencing January 10, 2021, a month prior to the continued Meeting of Creditors.

22.    In response to a United States Trustee inquiry on February 11, 2021, questioning the timing of the scheduled payment on January 10, 2021 under the Authorization Form dated February 10, 2021, Semrad and Huang provided a second, but unsigned Debit Authorization Form dated the same date, February 11, 2021, changing the scheduled payment dates to the 21st of the month instead of the 10th. A copy of the Second Debit Authorization Form is attached as Exhibit D.

23.    Despite not having a signed Authorization form, Semrad and Huang debited the Debtor's account on January 21, 2021. A copy of the receipt dated 1/21/2021 is attached as Exhibit E.

24.    Semrad and Huang state that the Debtor requested a change of the payment date and gave verbal authorization for the debit card transaction, but that explanation was not provided until after the discrepancy regarding the dates was identified and brought to Semrad's attention.

25.    Regardless of whether verbal authorization was provided or not, Semrad and Huang

9

received a payment on January 21, 2021 and has not filed a supplemental Form 2030 within 14 days of the payment.

26.    Furthermore, Semrad and Huang have not filed the Post-Petition Agreement or supplemented the Fee Disclosure in this case or any of the cases identified in footnote 4, all of which have debtors with either negative monthly cash flow or minimal disposable income and none of which include a monthly attorney fee in Schedule J for post-petition services.  The amount of post-petition fees Semrad and Huang have received and not disclosed is unknown. Given the volume of cases filed under a "$0 Down" or bifurcated fee arrangement the amount of undisclosed fee payments could be substantial.

## ARGUMENT

### I.    The Bifurcation Violates Local Rule 2090-1

27.    First, the Bifurcated Fee practice where the bulk of the fees, and in this case, the entire fee, are paid post-petition is nothing more than a deceptive attempt to satisfy or circumvent Local Rule 2090-1(E).  The $0 down prepetition fee in the pending case effectively relegates all legal fees paid post-petition regardless of when the services were provided.

28.    Adequate and competent legal representation in connection with a bankruptcy case requires time to be spent, before the filing of the bankruptcy case, on collecting, investigating and analyzing financial information. See In re Haynes, 216 B.R. 440, 443 (Bankr. D. Colo. 1997) (discussing the necessity of pre-petition attorney and paralegal time to comply with an attorney's ethical duties and Fed.R.Bankr.P 9011). Section707(b)(4)(C) and Fed.R.Bankr.P. 9011 requires that an attorney perform a reasonable investigation or inquiry to determine whether a bankruptcy petition is filed for a proper purpose and has adequate legal factual and evidentiary support. An analysis of the necessity for and the benefits, risks and appropriate chapter for bankruptcy relief is also required, as is informing, and advising a client with respect to these matters.

29.     The performance of these duties before the filing of the bankruptcy petition is necessary to serve a client's interest. The bifurcated fee structure used by Semrad and Huang conflicts with their duty to adequately represent their client and conflicts with the client's interests. Thus, the structure either impairs the necessary pre-petition investigation and analysis or encourages the deceptive labeling of pre-filing services as post-filing services. This is not done to serve the interests of a client. It is done to prevent the compensation for these services from being discharged as in <u>Effenson</u> and <u>Walls</u> and to facilitate the collection of such compensation.

30.     Here, the Debtor filed complete Bankruptcy Schedules and her Statement of Financial Affairs with her Voluntary Petition (ECF #1) (60 pages).   Semrad and Huang also filed the Statement of Debtor(s) Social Security Number(s) (ECF #2); Certification of Budget and Credit Counseling Course (ECF #3); Disclosure of Compensation (ECF #4); Chapter 7 Statement of Current Monthly Income Form 122A-1 (ECF #5); and. Payment Advices (ECF #7)   This was all done on day 1 of the case for a pre-petition fee of $0.  And, in this case, except for attendance at the Meeting of Creditors, which attendance is included in the Fee Disclosure, there was no substantive legal work in this case under the Post-Petition agreement. All of the services occurred during the period covered under the Engagement Letter, and any fee "owed" is discharged.

**II.     Failure to Comply with Clark & Washington**

31.     Semrad and Huang have not followed the procedures, in full or in part, as established in  <u>Clark & Washington</u>,. The Fee Disclosure includes both the pre-petition payment and the post-petition balance. The Fee Disclosure gives no indication of the agreement reached. There's no information regarding the bi-furcated fee arrangement, the two contracts or the fact that counsel will withdraw if payment arrangements for the balance of the fees are not made. The Fee Disclosure makes no reference to the additional $338 for the filing fee.

32.    The Fee Disclosure includes both the pre-petition payment of $0 and the post-petition balance. The Fee Disclosure fails to state that the firm does not represent the Debtor post-petition and that it will continue representation of the Debtor throughout the ten-day cooldown period. The Fee Disclosure does not state that Semrad is waiting for the Debtor to decide whether to retain counsel, different counsel or proceed pro se for the remainder of the case.

33.    There is no post-petition supplemental Official Form 2030 statement. All of the services are lumped together in the Fee Disclosure. A supplemental Official Form 2030 statement is required in each case every time a payment is received until the case is closed.  Also, the Fee Disclosure indicates that the pre-petition fees include attendance at the 341 meeting and preparation of petition and schedules, so it is unclear what the post-petition fees include.  The services provided post-petition are not commensurate with the amounts being charged. Generally, it appears that the only substantive post-petition services being performed in these cases is attending the Meeting of Creditors, which is one of the identified services included in the Fee Disclosure.  The bulk of the post-petition "services" listed in the Engagement letter are not even applicable in this case, should have been discussed prior to the filing of the case, and are either duplicative notices or simply clerical matters. The bifurcated fee is basically an attempt to defer payment of the pre-petition fees to a post-petition obligation, which is a dischargeable debt obligation.

34.    A closer examination of the terms of the Engagement Letter and Post-Petition Agreements used by Semrad and Huang adds to the confusion. The agreements both provide that the scope of the representation includes all aspects of the case. They are not clear and conspicuous agreements as required by 11 U.S.C. §528. The post-petition "services" are also inapplicable, unnecessary duplicative or should have been provided pre-petition.

35.    As stated above, the Post-Petition Agreement, provides a list of services to be rendered in exchange for the fee disclosed in the agreement.  However, it is clear that the bulk of these services, if necessary, were provided prior to the filing of the case, including the analysis of the case and the preparation, and filing of the Voluntary Petition, Bankruptcy Schedules, and Statement of Financial Affairs. Otherwise, the Debtor could not have filed a complete set of Bankruptcy Schedules and Statement of Financial Affairs together with her Voluntary Petition on December 7, 2020.

36.    A closer analysis of the list of post-petition services highlights the fact that the bifurcation of fees does not match the bifurcation of services.

i Advise you of the requirement to attend the meeting of creditors and notify you of the date, time, and place of the meeting;

- Prepetition service and if necessary, clerical form letter.

ii. Advise you of the requirement to attend a debtor education course and provide a certificate of completion to the Firm;

- Prepetition service and computer generated form.

iii. Send notice of your case filing to creditors;

- Notice of Commencement of Case generated and mailed by Clerk of Court.

iv. Correspond with creditors regarding any matters necessary for the administration of your case, including to cease payroll garnishments, unfreeze bank accounts, or recover property that was improperly seized by a creditor;

- Not applicable in this case.

v. Timely submit to the Chapter 7 trustee properly documented proof of income, tax records as well as any other necessary documentation;

- Information gathered pre-petition and clerical function.

vi. Provide you with knowledgeable legal representation at the meeting of

13

creditors as well as any continued or rescheduled meetings in time for
check-in and examination;

- Should be included in the pre-petition fee.

vii. Timely prepare and file the notice of completion of the debtor education
course;

- Computer generated form.

viii. If the Firm will be employing another attorney to attend the meeting of
creditors, personally explain to you, in advance, the role and identity of
the other attorneys and provide that attorney with your file in sufficient
time to review it and properly represent you at the meeting;

- Not applicable and non-compensable.

ix. Timely negotiate with the Trustee regarding any property or actions that
the Trustee may pursue that could be adverse to your interests;

- Not applicable in this case.

x. Timely prepare, file, and serve any necessary statements, amended
statements, amended schedules and any change of address, in
accordance with information provided by you;

- Minor amendment filed.

xi. Monitor all incoming case information, including but not limited to,
Reaffirmation agreements, notice of audits by the US Trustee,
correspondence from you or any interested parties;

- Not applicable in this case. The debtor owns no real property and has no
  car.

xii. Review and negotiate, if necessary, any reaffirmation agreements and
personally explain the terms of said agreements to you;

- Not applicable in this case.

xiii. Be available to respond to your questions throughout the term of the
case;

- Not applicable in this case.

xiv. Review and timely respond, if necessary, to Trustee motions to dismiss the case;

- Not applicable in this case.

xv. Review and timely respond, if necessary, to motions for relief from stay;

- Not applicable in this case.

xvi. Prepare, file, and serve all appropriate motions to avoid liens;

- Not applicable in this case.

xvii. Prepare, file, and serve all appropriate motion to redeem;

- Not applicable in this case.

xviii. Send *In Re Mendiola* letters to previously undisclosed creditors;

- Not applicable in this case.

xix. Provide any other legal services necessary for the administration of the
case.

- Not applicable in this case.

xx. Provide post discharge services such as a review of Client(s)' credit report
and advising Client(s) regarding possible discharge violations that may
have occurred.

- Not applicable in this case.

37.    As shown above, the purported bifurcation of the services is illusory. The bulk of
the substantive services provided occurred pre-petition so Semrad and Huang could purportedly
fulfill their obligations under 11 U.S.C. § 707(b)(4)(c) and Rule 9011. Except for attendance at
the Meeting of Creditors, which was or should be included in the pre-petition fee, the additional
"services" are clerical in nature, duplicative notices or are inapplicable in this case.  In fact, a
review of the dockets referenced in footnote 4, reveals that the services are inapplicable in most
cases.

### III.    Fee Disclosures and Failure to Disclose Receipt of Payment

38.    The requirement to file a fee disclosure is imposed by 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b).  Section 329(a) states that "[a]ny attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation."

39.    Federal Rule of Bankruptcy Procedure 2016(b) states that "[e]very attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. **A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed [emphasis added]**."

40.    A review of the docket in this case as well as the cases referenced above in Paragraph 10, Footnote 4, reveals that Semrad and Huang have failed to disclose any of the monthly post-petition fee payments received from the debtors under the Post-Petition agreements in violation of Rule 2016.  Semrad and Huang are required to timely disclose receipt of any payments and file a new Form 2030 within 14 days of receipt of any payments as required by Rule 2016.  Semrad and Huang have only disclosed the $0 "fee" pre-petition in this case. It is hard to imagine providing all the necessary services to properly review all the information, analyze the issues and properly

advise a client concerning the appropriateness of bankruptcy relief, the various forms of relief available, review all the material, and prepare all of the necessary documents to file the Voluntary Petition, Bankruptcy Schedules and Statement of Financial Affairs (ECF #1);  Debtor(s) Social Security Number(s) (ECF #2); Certification of Budget and Credit Counseling Course (ECF #3); Disclosure of Compensation (ECF #4); and Chapter 7 Statement of Current Monthly Income Form 122A-1 (ECF #5); on the Petition Date for $0 fee, while the post-petition clerical services in items (i) though (vii) in the Engagement Letter and Post-Petition Agreement costs $1,362. The disparity only further highlights the deception perpetrated with the $0 down or minimal amount of fees paid for the pre-petition legal services.

**IV. Improper Loans**

41.  Section 526 of the Bankruptcy Code provides in part, the following:

(a) A debt relief agency shall not - …

(b) Advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing or for representing a debtor in a case under this title.

42.  Semrad and Huang knowingly violate this section of the Code by offering loans to prospective debtors to pay the filing fees associated with their cases.   The loans for the filing fee are either discharged as a prepetition obligation that arise pre-petition under the Engagement Letter or are a violation of 11 U.S.C.  §526, advising the debtors to incur more debt in contemplation of filing a case under the Bankruptcy Code.

43. In addition, Rule 4-1.8 ( e) of the Florida Bar Rules prohibits a lawyer from providing financial assistance to a client in connection with pending or contemplated litigation with two exceptions, neither of which apply in this case**.**

17

44. The option for payment of the filing fee by Semrad and Huang on behalf of the

Debtor as provided in the Engagement Letter and which amount is added to the Post Petition

Agreement as part of the "fee", violates this Florida Bar Rule and is prohibited.

**V.        Conclusion and Injunctive Relief**

45.        Rule 2017 provides for the examination of a debtor's transactions with debtor's

attorney:

> **a) Payment or Transfer to Attorney Before Order for Relief.**
> On motion by any party in interest or on the court's own initiative, the court after notice
> and a hearing may determine whether any payment of money or any transfer of property
> by the debtor, made directly or indirectly and in contemplation of the filing of a petition
> under the Code by or against the debtor or before entry of the order for relief in an
> involuntary case, to an attorney for services rendered or to be rendered is excessive.
>
> **(b) Payment or Transfer to Attorney After Order for Relief.**
> On motion by the debtor, the United States trustee, or on the court's own initiative, the
> court after notice and a hearing may determine whether any payment of money or any
> transfer of property, or any agreement therefor, by the debtor to an attorney after entry of
> an order for relief in a case under the Code is excessive, whether the payment or transfer
> is made or is to be made directly or indirectly, if the payment, transfer, or agreement
> therefor is for services in any way related to the case.

Fed.R.Bankr.P. 2017

46.        Given the limited disclosures in this case, neither the Court, the Trustee, or any party,

have adequate notice that there are two fee agreements and that the "bifurcated fee" procedures

are being followed.  The Bankruptcy Schedules, Statement of Financial Affairs, Debtor's Social

Security number, Certification of Budget and Credit Counseling Course; Disclosure of

Compensation; and Chapter 7 Statement of Current Monthly Income Form 122A-1, were all filed

at the same time on the Petition Date. Semrad appears to be using the bifurcated fee system to

collect post-petition fees for pre-petition services, which amount, if any, is discharged. More

disclosure and information need to be provided and these contracts should be cancelled.

47.     The prohibited conduct described in this motion is likely to reoccur. Semrad's business model involves causing debtors to pay and be charged post-petition for pre-petition services as well as unreasonable attorney fees in violation of 11 U.S.C. § 329. The disgorgement of fees in one case, or even an injunction against a single local attorney, is not sufficient to prevent Semrad from continuing with this business model.

48.     As such, the Court should cancel the Post-Petition Agreements and consider enjoining similar conduct in future cases, pursuant to 11 U.S.C. § 105. "Bankruptcy Code Section 105 provides the court with the power to, among other things, 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions' of Title 11." In re Desantis, 395 B.R. 162, 166, n.7 (Bankr. M.D. Fla. 2008). An injunction against future violations is appropriate to protect the integrity of the bankruptcy system.

WHEREFORE, the United States Trustee requests that the Court:

(1) review the fees collected by Semrad and Huang;

(2) cancel the post-petition services contract and refund all fees paid to Semrad and Huang post filing;

(3) prohibit the bifurcation of services without clear, reasonable, transparent terms and procedures in place;

(4) prohibit Semrad and Huang from loaning and/or advancing the filing fee on behalf of debtors;

*[remainder of the page intentionally left blank]*

(5) take such other action as the Court deems necessary to prevent future instances of the

prohibited conduct; and

(6) for such further and other relief as this Court deems just and equitable.

Nancy J. Gargula
United States Trustee

  /s/ *Steven D. Schneiderman*
Steven D. Schneiderman
Trial Attorney
Ariel Rodriguez
Trial Attorney
Office of the U.S. Trustee
51 S.W. First Ave., Room 1204
Miami, FL 33130

I hereby certify that I am admitted to the Bar of the State of Illinois, and that I am excepted from additional qualifications to practice in this Court pursuant to Local Rule 9011-4 and 2090(B) (2) (b) pertaining to attorneys representing the United States government.

## CERTIFICATE OF SERVICE

I hereby certify that a truce copy of the attached U.S. TRUSTEE'S MOTION FOR EXAMINATION OF FEES OF HAIDAN HUANG AND THE SEMRAD LAW FIRM A/K/A/ DEBTSTOPPERS UNDER 11 U.S.C. SECTION 329(b); FEDERAL RULES OF BANKRUPTCY PROCEDURE RULE 2016 AND 2017; AND FOR AN INJUNCTION AGAINST PROHIBITED CONDUCT was sent via CM/ECF to those parties denoted below or via U.S. Mail, properly addressed and with correct postage to the following:

- Scott N Brown    sbrown@bastamron.com,
  jarrechavala@bastamron.com;snbrown@ecf.axosfs.com;F003@ecfcbis.com
- Haidan Huang    dhuang@semradlaw.com, flsb.courtview@slfcourtview.com

Synchrony Bank
PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

Cheryl Brown
55 NE 151 St
Miami, FL 33162

DONE, this 19th day of February 2021

　　　　　　　　　　　　　/s/ _____
　　　　　　　　　　　　　Ariel Rodriguez
　　　　　　　　　　　　　Trial Attorney

.

21